NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| KARON GOMEZ, | : | **Hon. Faith S. Hochberg** |
| Petitioner, | : | Civil No. 05-3726 (FSH) |
| v. | : | |
| LYDELL B. SHERRER, et al., | : | **O P I N I O N** |
| Respondents. | : | |

**APPEARANCES:**

    KARON GOMEZ, #160516C
    Northern State Prison
    168 Frontage Road, A 1-E
    Newark, New Jersey  07114-2300
    Petitioner pro se

    PAULA T. DOW, ESSEX COUNTY PROSECUTOR
    BARBARA ROSENKRANS, Assistant Prosecutor
    Essex County Courts Building
    Newark, New Jersey  07102
    Attorneys for Respondents

**HOCHBERG**, District Judge

    Karon Gomez filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(a) challenging a judgment of conviction in the Superior Court of New Jersey.  Respondents filed an Answer, arguing that the Petition should be dismissed on the merits.  For the reasons expressed below, the Court dismisses the Petition with prejudice and denies a certificate of appealability.  See 28 U.S.C. §§ 2253(c), 2254(a), (b), (c).

## I.  BACKGROUND

Petitioner challenges a judgment of conviction entered on June 3, 2002, in the Superior Court of New Jersey, Law Division, Essex County, after a jury convicted him of first degree robbery, possession of a large capacity ammunition magazine, possession of an assault weapon, unlawful possession of a handgun, and possession of a handgun for an unlawful purpose.  The Law Division denied Petitioner's motion for a new trial, and sentenced Petitioner to an aggregate 20-year term of incarceration, with an 85% period of parole ineligibility, pursuant to the No Early Release Act, see N.J. Stat. Ann. § 2C:43-7.2.  Petitioner appealed.  In an opinion filed November 8, 2004, the Appellate Division of the Superior Court of New Jersey affirmed.  See State v. Gomez, No. A-0004-02T4 slip op. (Superior Ct. of N.J., App. Div,. Nov. 8, 2004).  On March 1, 2005, the Supreme Court of New Jersey denied certification.  See State v. Gomez, 183 N.J. 212 (2005) (table).

Petitioner executed the Petition which is now before the Court on July 18, 2005.  The Clerk received it on July 26, 2005.  The Court notified Petitioner of the consequences of filing such a Petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and gave him an opportunity to withdraw the Petition and file one all-inclusive Petition, pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  The Petition does not set forth grounds on its face but incorporates by reference the grounds presented in Petitioner's brief filed in the Appellate Division on direct appeal.  (Pet. ¶ 12, incorporating Brief on Behalf of Defendant-Appellant.)  These grounds are set forth below verbatim:

> Ground One:  THE TRIAL COURT'S FAILURE TO STRIKE
> THE ENTIRE JURY PANEL BASED UPON PROSECUTOR'S
> DISCRIMINATORY USE OF PEREMPTORY CHALLENGES

2

CONSTITUTED AN ABUSE OF DISCRETION AND A DENIAL OF DEFENDANT'S RIGHT TO A FAIR TRIAL.

Ground Two:  THE STATE'S FAILURE TO PROVIDE THE DEFENSE WITH RELEVANT DISCOVERABLE MATERIAL CONSTITUTED A BRADY VIOLATION AND DEPRIVED DEFENDANT OF DUE PROCESS OF LAW.  THEREFORE DEFENDANT'S MOTION FOR A MISTRIAL BASED UPON FAILURE TO PROVIDE DISCOVERY SHOULD HAVE BEEN GRANTED.

Ground Three:  THE TRIAL COURT'S FAILURE TO GIVE THE JURY A CLAWANS CHARGE, TO PERMIT DEFENSE COUNSEL TO COMMENT ON THE UNAVAILABILITY OF WITNESSES, TO GRANT A MISTRIAL BASED UPON THE PROSECUTOR'S ATTEMPT TO ELICIT HEARSAY TESTIMONY CONCERNING WITNESSES NOT PRODUCED AT TRIAL AND TO INSTRUCT THE JURY ADEQUATELY WITH RESPECT TO THE ISSUE OF FLIGHT DEPRIVED THE DEFENDANT OF DUE PROCESS OF LAW.

Ground Four:  THE COMMENTS MADE BY THE PROSECUTOR IN HER SUMMATION AMOUNTED TO PROSECUTORIAL MISCONDUCT THEREBY DENYING THE DEFENDANT HIS RIGHT TO A FAIR TRIAL.  (U.S. CONST. AMEND. V., VI AND XIV.)

Ground Five:  THE TRIAL JUDGE'S DECISION TO ALLOW INTO EVIDENCE AN AUDIO TAPE FROM POLICE DISPATCH CONSTITUTED AN ABUSE OF DISCRETION AND DENIED THE DEFENDANT HIS RIGHT TO A FAIR TRIAL.

Ground Six:  THE TRIAL COURT'S DENIAL OF DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL MADE AFTER THE STATE'S CASE CONSTITUTED REVERSIBLE ERROR AS THE STATE FAILED TO ESTABLISH A PRIMA FACIE CASE WITH RESPECT TO CERTAIN COUNTS.

Ground Seven:  THE TRIAL COURT'S DENIAL OF DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL MADE AFTER DISCHARGE OF THE JURY OR IN THE

>ALTERNATIVE FOR A NEW TRIAL CONSTITUTED AN
>ABUSE OF DISCRETION AS THE DEFENDANT WAS
>ENTITLED TO SUCH RELIEF DUE TO THE AGGREGATE
>EFFECT OF THE MANY IMPROPRIETIES IN THIS CASE.
>
>Ground Eight:  THE SENTENCE IMPOSED WAS
>MANIFESTLY EXCESSIVE AND AN ABUSE OF THE TRIAL
>COURT'S DISCRETION AS IT FAILED TO PROPERLY
>WEIGH AGGRAVATING VERSUS MITIGATING FACTORS
>FOR IMPOSITION OF A TERM OF INCARCERATION WHICH
>WAS GREATER THAN THE PRESUMPTIVE TERM;
>THEREFORE TH SENTENCE MUST BE MODIFIED BY THE
>REVIEWING COURT.

State v. Gomez, No. A-0004-02T4 slip op. at 3-6 (Super. Ct. of N.J., App. Div., Nov. 8, 2004).

The State filed an Answer, arguing that the Petition should be dismissed because none of the claims satisfies the standard for granting habeas relief.

## II.  STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

>[A] district court shall entertain an application for a writ of habeas
>corpus in behalf of a person in custody pursuant to the judgment of
>a State court only on the ground that he is in custody in violation of
>the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997).  "Federal courts hold no supervisory authority over state judicial

4

proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982). "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable. It is unnecessary in such a situation to inquire whether the prisoner preserved his claim before the state courts." Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982).

A district court must give deference to determinations of state courts. See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996). Federal courts "must presume that the factual findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary." Stevens v. Delaware Correctional Center, 295 F.3d 361, 368 (3d Cir. 2002).

Where a federal claim was "adjudicated on the merits" [1] in state court proceedings, § 2254 does not permit habeas relief unless adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

---

[1] "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (quoting Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001)). A state court may render an adjudication or decision on the merits of a federal claim by rejecting the claim without any discussion whatsoever. Rompilla, 355 F.3d at 247.

A decision is "'contrary to' a Supreme Court holding if the state court 'contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Rompilla v. Horn, 355 F.3d 233, 250 (3d Cir. 2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

Under the "'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable. Id. at 409-10.

A court begins the analysis by determining the relevant clearly established law. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

### III. DISCUSSION

A. Gilmore Claim

In Ground One, Petitioner argues that "the trial court's failure to strike the entire jury panel based upon prosecutor's discriminatory use of peremptory challenges constituted an abuse of discretion and a denial of defendant's right to a fair trial." (Brief on Behalf of Defendant-Appellant, p. 16.) While Petitioner's Appellate Division brief mentions Batson v. Kentucky, 476

6

U.S. 79, 96 (1986), J.E.B. v. Alabama, 511 U.S. 127 (1994) , and Hernandez v. New York, 500 U.S. 352 (1991), as background, Petitioner does not assert violation of the Equal Protection Clause of the Fourteenth Amendment.  Instead, Petitioner argues that the trial court violated State v. Gilmore, 103 N.J. 508 (1986), which (according to Petitioner) "held that the New Jersey Constitution forbids a prosecutor from exercising peremptory challenges to remove potential petit jurors who are members of a cognizable group on the basis of presumed group bias."  (App. Div. Brief on Behalf of Defendant-Appellant, p.17.)   Petitioner's argument continues:

> As described in Gilmore, the defendant initially has the burden to make a prima facie case showing that the prosecution exercised its peremptory challenges on constitutionally impermissible grounds. 103 N.J. at 535.  To satisfy this burden, a defendant "must establish that the potential jurors wholly or disproportionately excluded were members of a cognizable group within the meaning of the representative cross-section rule" and that "there is a substantial likelihood that the peremptory challenges resulting in the exclusion were based on assumptions about group bias rather than any indication of situation-specific bias."  Id. at 535-536 . . . .
>
>    After the State's first eight challenges, an objection was made to the prosecutor's challenges on the basis that there was a pattern with respect to African-American women and women in general. (6T 175-9 to 15 and 7T 11-2 to 4).
>
>    Here, the defendant established a prima facie case under Gilmore with respect to the requirement "that the potential jurors wholly or disproportionately excluded were members of a cognizable group." Out of a total of nine (9) challenges used by the prosecutor, eight challenges were used on females and six (6) of those eight (8) females were Afro-American.  There are two cognizable groups here:  1) females and 2) Afro-Americans.  The first part of the test is satisfied because the peremptory challenges were used to exclude members of the aforementioned groups.  It is obvious that the prosecutor engaged in discriminatory use of peremptory challenges based upon gender and race.  The inescapable fact remains that the prosecutor used 87 1/2% of her challenges on women and 62 1/2% on Afro-American women.

7

>   The second part of the test requires proof of a "substantial likelihood" that the prosecutor exercised his peremptory challenges because of "group bias" rather than "situation-specific" bias. Inevitably, the determination of "substantial likelihood" of group prejudice depends on the consideration of "all of the relevant circumstances." Gilmore, supra, 103 N.J. at 536.
>
>   This matter is similar to the case of State v. Townes, 220 N.J. Super. 38, 41 (App. Div. 1987) . . . .  In response to defense counsel's objections to the prosecutor's use of challenges, the trial judge ruled that under Gilmore and Batson, the prosecutor need not explain or provide reasons for their challenges and decided to continue with the jury selection process.  (7T 20-5 to 9).
>
>   The trial judge, however, was incorrect.  Once a defendant has made a prima facie showing of discriminatory use of peremptory challenges, the burden shifts to the prosecution to establish that the peremptory challenges under review are justifiable on the basis of concerns about situation-specific bias.  To carry this burden, the State must articulate "clear and reasonably specific" explanations of its "legitimate reasons" for exercising each of the peremptory challenges.  Gilmore, supra, at 537.  The Court mus consider whether those reasons are "reasonably relevant to the particular case on trial or its parties or witnesses", Gilmore, supra, at 538, and it is essential that separate findings be made with respect to each disputed challenge.  State v. Clark, 316 N.J. Super. 462, 473 (App. Div. 1998).
>
>   The court's failure to make specific findings with respect to the prosecutor's reasons for each of her disputed peremptory challenges resulted in a denial of defendant's right to a fair trial. The remedy available for a prosecutor's discriminatory use of peremptories, as provided by Gilmore, is the striking of the entire jury panel.
>
>   The failure of the trial judge to strike the entire jury panel based upon the discriminatory use of peremptory challenges by the State, amounted to prejudicial error requiring that the defendant be afforded a new trial.

(App. Div. Brief on Behalf of Defendant-Appellant at pp. 17-20.)

The Appellate Division rejected Petitioner's Gilmore claim on direct appeal as follows:

> Defendant first argues that the trial prosecutor unconstitutionally exercised peremptory challenges to exclude jurors solely because of their gender or race . . . . [State v.] Gilmore, [103 N.J. 508 (1986),] sets forth the procedure to be followed when a defendant alleges the improper use of peremptory challenges. Since it is presumed that the State has exercised its peremptory challenges for permissible reasons, State v. Watkins, 114 N.J. 259, 264 (1989), the defendant must make a prima facie showing that the prosecutor exercised peremptory challenges on constitutionally impermissible grounds. To do so, he must show that (1) the disproportionate number of excused jurors were members of a cognizable group and (2) there is substantial likelihood that the prosecutor exercised his peremptory challenges based on group bias rather than situation-specific bias. Gilmore, supra, 103 N.J. at 535-36. If a defendant makes a prima facie showing, the burden shifts to the prosecution to provide clear and specific explanations showing that its peremptory challenges were exercised on situation-specific bias.
>
> In the case at bar the original jury panel consisted of six white men, five white women, one African-American man, one African-American woman and one person of Indian descent. The defense exercised four peremptory challenges, excusing three white men and one white woman. The State exercised peremptory challenges to excuse three white women, four African-American women and one African-American man. When the defense made a motion under Gilmore, the prospective jury was composed of four white men, two white women, two African-American women, five African-American men and one man of either Arab or Indian descent.
>
> Judge Nelson denied the Gilmore motion finding that the defendant failed to make the requisite prima facie showing that the prosecutor exercised peremptory challenges based on race or gender. We agree. While a disproportionate number of jurors excused by the prosecutor were members of a cognizable group, namely African-Americans and women, there is no showing that the peremptory challenges were based on group bias as opposed to situation-specific bias. Id. at 535-36. See State v. Fuller, 356 N.J. Super. 266, 279-80 (App. Div. 2002), certif. denied, 176 N.J. 426 (2003).

State v. Gomez, slip op. at pp. 6-8.

The Supreme Court of New Jersey grounded its holding in Gilmore on the New Jersey Constitution, i.e., the Court held that "Article I, paragraphs 5, 9, and 10 of the New Jersey Constitution forbid a prosecutor to exercise peremptory challenges to remove potential petit jurors who are members of a cognizable group on the basis of their presumed group bias." State v. Gilmore, 103 N.J. at 517; see also Gilmore, 103 N.J. at 522 ("For one thing, Batson rests on federal grounds of equal protection, whereas Wheeler and its progeny rest on state constitutional rights to trial by an impartial jury").  In contrast, the United States Supreme Court held in Batson that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant."  Batson, 476 U.S. at 89.

Petitioner's claim that he was denied a fair trial under State v. Gilmore is a state constitutional claim, not a claim under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.  However, in reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief.[2]  Nor may the Court

---

[2] See, e.g., Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (where habeas petition raised claim that the police had elicited petitioner's statements without satisfying Miranda, the district court erred when it "went beyond the habeas petition and found the statements [petitioner] made after receiving the Miranda warnings to be involuntary under due process criteria"); Baker v. Barbo, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (where petition contains ground asserting the ineffective assistance of counsel during plea negotiations and trial, court is not permitted to  consider ground, evident from the facts but not raised in the petition, that appellate counsel was ineffective by failing to advise petitioner that he faced a longer sentence by appealing the conviction).

recharacterize a ground asserted under state law into a federal constitutional claim.[3]  "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).  Moreover, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citation omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).  Because Petitioner's claim that the New Jersey courts failed to follow the requirements of Gilmore is a claim arising under New Jersey law, the claim is not cognizable under § 2254.

B.  Brady Violation

In Ground Two, Petitioner asserts that "the state's failure to provide the defense with relevant discoverable material constituted a Brady violation and deprived defendant of due process of law."  (Brief on Behalf of Defendant-Appellant, p. 21.)   Petitioner contends in Ground Two that the state failed to provide in discovery (1) the complete report of Detective Trent Clark; (2) a copy of a video tape made from the gas station's surveillance camera; (3) report of Investigator Graves regarding the surveillance video; (4) the fact that Detective Roland Baugh interviewed employees and the result of his investigation.  (Id., pp. 21-23.)  Petitioner argues that

> the suppressed evidence may have affected the outcome of the trial
> because the video tape may have been able to produce witnesses

---

[3] See Engle, 456 U.S. at 119-20 & n.19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights and § 2254 was inapplicable); Kontakis v. Beyer, 19 F.3d 110, 116-17 & n.10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights).

> for the defendant if he had ample time to investigate what was
> contained in the tape.  Additionally, as the trial judge said, the tape
> may have been relevant with respect to the issue of credibility of
> the State's witnesses.
>
> . . . .
>
> The defense was completely surprised by the discovery of the
> video tape and did not have adequate opportunity to determine if
> Detective Roland Baugh had obtained names of potential
> witnesses.  If the tape was relevant with respect to the issue of
> credibility, as the judge indicated, then it was probative.  The
> defendant certainly suffered prejudice by not being provided with
> the aforementioned discovery prior to trial as he was denied the
> opportunity to seek out possible witnesses from the video tape and
> the right to conduct proper cross-examination of the witnesses
> because of insufficient discovery.
>
>    The continuation of the trial, with discovery being provided near
> the end of the State's case in chief, resulted in a manifest injustice
> requiring the granting of a mistrial.  The trial judge's failure to
> grant a mistrial constituted an abuse of discretion.

(Id., pp. 26-28.)

The prosecution in a criminal proceeding has a due process obligation to disclose to the defendant its knowledge of material evidence favorable to the defendant, either because the evidence is exculpatory or because it can serve to impeach a key prosecution witness.  See Kyles v. Whitley, 514 U.S. 419, 433 (1995); Giglio v. United States, 405 U.S. 150 (1972); Brady v. Maryland, 373 U.S. 83 (1967).  "There are three components of a true *Brady* violation:  The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  Strickler v. Greene, 527 U.S. 263, 281-82 (1999).  "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A

12

'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985).

In this case, where the evidence was disclosed to Petitioner during trial, Brady is not implicated.  See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) (no Brady violation occurred where exculpatory evidence came out during the trial); United States v. Gordon, 844 F.2d 1397, 1403 (9th Cir. 1988) (no Brady violation where exculpatory evidence was provided to defendants during trial); United States v. Starusko, 729 F.2d 256, 262 (3d Cir. 1984) ("Defense counsel's independent discovery of the statement - fortuitous though it was - negates any argument that the defendant was deprived of rights assured by the Constitution"). Moreover, Petitioner cites no Supreme Court precedent finding a constitutional violation where the evidence was disclosed during trial.  Under these circumstances, the state courts' adjudication of Petitioner's Brady claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, see 28 U.S.C. § 2254(d)(1), and Petitioner is not entitled to habeas relief on Ground Two.

C.  Instructions

In Ground Three, Petitioner argues that the trial court's failure to instruct the jury under State v. Clawans, 38 N.J. 162 (1962), that the state's failure to produce a witness (Turean Marcus), who would "serve to elucidate the facts in issue, raises a natural inference that the party so failing fears exposure of those facts would be unfavorable to him." Id. at 170.  The Appellate Division rejected this claim on direct appeal as follows:

    Defendant next argues that Judge Nelson erred in his jury instruction relating to the State not calling certain witnesses to testify at trial.  The prosecutor called only Valle to testify as to the circumstances of the robbery.  Neither the other alleged victims, Rollins and Lewis, nor the witnesses who fled, Marcus and Murray, were produced for testimony.  Prior to the close of the State's case, the prosecutor moved in limine to prohibit the defense from arguing that an adverse inference should arise from the failure to call these witnesses or that the court should give an instruction to that effect.  The State produced Investigator Robert Flanigan at a N.J.R.E. [New Jersey Rules of Evidence] 104 hearing.  He testified Rollins was incapable of intelligently communicating with the jury, Lewis and Murray could not be located and Marcus failed to respond to a subpoena.  At the conclusion of the hearing the defense requested the court to instruct the jury pursuant to State v. Clawans, 38 N.J. 162 (1962) that the jury could draw an inference from the failure of the State to call these witnesses that their testimony would have been adverse to the State's case.  Judge Nelson denied the motion and instructed the jury in accordance with the model jury charge that the jurors could not draw any inference against or in favor of either party from the failure to the witnesses to testify . . . .  Judge Nelson did not err in denying the defense the right to an adverse inference instruction and that his instruction to the jury was proper under the circumstances of this case.

    Defendant also asserts that Judge Nelson committed reversible error by instructing the jury on flight . . . .  He argues that there was no testimony to indicate that the Nissan did not stop voluntarily when confronted by police.  However, the State's proofs were that, after police cars appeared, the Nissan took off with all three defendants inside at a fast rate of speed and with its headlights out.  The fact that it was intercepted before a getaway could be achieved is of no moment.  We agree with Judge Nelson that there was a sufficient factual basis for the flight instruction permitting the jury to determine if there was evidence of flight which could infer a consciousness of guilt.  State v. Petrolia, 45 N.J. Super. 230, 233 (App. Div. 1957).

State v. Gomez, Docket No. A-0004-02T4 slip op. at 12-13.

A habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions on the elements of an offense . . . must include particular provisions" or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997); see also Estelle, 502 U.S. at 71-75. As the Third Circuit explained,

> It thus follows that for the error of state law in the justification instructions, assuming that there was an error, to be meaningful in this federal habeas corpus action, there would have to be a body of federal law justifying the use of deadly force which is applicable in a state criminal action charging an offense based on the defendant's use of that force. Then the error in the jury instructions would be significant if the instructions did not satisfy that body of law. Put in a different way, the jury instructions on justification, even if correct under state law, would need to have relieved the state of the necessity of proving an element of the offense as required by federal law or to have deprived the petitioner of a defense the state had to afford him under federal law in order to be significant in a federal habeas corpus action. If we concluded that a petitioner could obtain habeas corpus relief without making such a showing, then district courts in habeas corpus cases would sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it.

Johnson, 117 F.3d at 110.

Petitioner is not entitled to habeas relief on his claims challenging the instructions because he does not point to a federal requirement that jury instructions must include the requested provisions, nor does he show that the absence of these instructions deprived him of a defense which federal law provided to him. Johnson, 117 F.3d at 111. Moreover, Petitioner has not shown that the state's adjudication of his claims was contrary to, or involved an unreasonable application of, Supreme Court precedent. Thus, habeas relief is not warranted on Ground Three.

D.  Prosecutorial Misconduct During Summation

In Ground Four, Petitioner argues that "comments made by the prosecutor in her summation amounted to prosecutorial misconduct thereby denying the defendant his right to a fair trial," contrary to the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.  (Brief on Behalf of Defendant-Appellant, p. 39.)  In support of this claim, Petitioner states that the prosecutor commented during summation on facts which were not in evidence.  Specifically, the prosecutor allegedly misstated what the police officer stated in his radio transmission for backup.  According to Petitioner, the prosecutor stated in summation that the officer said "we got a robbery going on at Lincoln and Main," when the police officer actually testified that he said "there's a possible robbery in progress, send back up."  (Id., pp. 39-40.)  In addition, Petitioner objects to the prosecutor's statement that the gun, which was recovered close to the car, could have been thrown from the car by defendants.  (Id. at 40-41.)  Petitioner argues that the trial judge's curative instruction that the recitation of facts by an attorney is not controlling failed to overcome the prejudicial impact of the prosecutor's comments.  The Appellate Division rejected this claim without comment, finding it lacked sufficient merit to warrant discussion.

Prosecutorial misconduct may "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  Where "specific guarantees of the Bill of Rights are involved, [the Supreme] Court has taken special care to assure that prosecutorial misconduct in no way impermissibly infringes them." Id. at 642.  The quantum or weight of the evidence is crucial to determining whether the prosecutor's statements before the jury were so prejudicial as to result in a denial of due process.

Darden v. Wainwright, 477 U.S. 168, 182 (1986); Donnelly, 416 U.S. at 644; Moore v. Morton, 355 F.3d 95, 111 (3d Cir. 2001).

In this case, the prosecutor's comments did not implicate specific guarantees in the Bill of Rights and the trial judge gave a curative instruction. The Appellate Division's rejection of Petitioner's prosecutorial misconduct claim did not result in a decision that was contrary to, or involved an unreasonable application of, Donnelly and its progeny, see 28 U.S.C. § 2254(d)(1), and Petitioner is not entitled to habeas relief on Ground Four.

E.  Admission of Audiotape

In Ground Five, Petitioner argues that "the trial judge's decision to allow into evidence an audio tape from police dispatch constituted an abuse of discretion and denied the defendant his right to a fair trial."  (Brief on Behalf of Defendant-Appellant, p. 43.)  As factual support, Petitioner contends that the trial judge's admission of the tape recording was improper because there was no evidence of operator competency, accuracy and authenticity, as required by the New Jersey Supreme Court's ruling in State v. Driver, 38 N.J. 255, 287-88 (1962).

The admissibility of evidence is a question of state law which is not cognizable under habeas review.  See Estelle, 502 U.S. at 68 (incorrect admission of evidence under state law does not violate due process); Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal habeas court, however, cannot decide whether the evidence in question was properly allowed under the state law of evidence"); Hickey v. Jeffes, 571 F.2d 762, 766 (3d Cir. 1978) ("As to the contention that the trial court erred in admitting the victim's testimony of a prior flirtatious conversation, we find that, if there was any error in the court's ruling . . . that error was at best one of interpretation of the state's law of evidence and did not arise to constitutional

17

dimensions"). Because the admission of the police tape recording was not contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court, Petitioner is not entitled to habeas relief under Ground Five.

F.  Prima Facie Case

In Ground Six, Petitioner argues that "the trial court's denial of the defendant's motion for judgment of acquittal made after the state's case constituted reversible error as the state failed to establish a prima facie case with respect to certain counts." (Brief on Behalf of Defendant-Appellant, p. 47.)  In support of Ground Six, Petitioner asserts that the trial judge's denial of his motion for acquittal violated State v. Reyes, 50 N.J. 454 (1967).

As stated above, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. at 67-68; 28 U.S.C. § 2254(a).  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982).  Ground Six is not cognizable under § 2254 because it does not assert violation of federal law.

G.  Aggregate Effect of Improprieties

In Ground Seven, Petitioner argues that the trial court's failure to dismiss the case or grant his motion for a new trial "constituted an abuse of discretion as the defendant was entitled to such relief due to the aggregate effect of the many improprieties in this case." (Brief on Behalf of Defendant-Appellant, p. 50.)  In support of Ground Seven, Petitioner relies on State v. Orecchio, 16 N.J. 125, 129 (1954), and New Jersey Court Rules.  As in Ground Six, Ground Seven is not cognizable under § 2254 because it does not assert violation of federal law.

H.  Excessive Sentence

In Ground Eight, Petitioner argues that "the sentence imposed was manifestly excessive and an abuse of the trial court's discretion as it failed to properly weigh aggravating versus mitigating factors for imposition of a term of incarceration which was greater than the presumptive term; therefore the sentence must be modified by the reviewing court." (Brief of Defendant-Appellant, p. 55.)

The problem with Petitioner's challenge to the sentence is that, absent a claim that the sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment or that it is arbitrary or otherwise in violation of due process, the legality of a sentence is a question of state law.  See Chapman v. United States, 500 U.S. 453, 465 (1991); Gryger v. Burke, 334 U.S. 728, 731 (1948); Jones v. Superintendent of Rahway State Prison, 725 F.2d 40, 42-43 (3d Cir. 1984).[4]  "[A] person who has been so convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual . . . and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause."  Chapman, 500 U.S. at 465 (citations omitted).

---

[4] In Gryger v. Burke, 334 U.S. 728, 731 (1948), the Supreme Court rejected a due process challenge to a life sentence imposed by the Pennsylvania courts.  The Supreme Court held:

> We are not at liberty to conjecture that the trial court acted under an interpretation of the state law different from that which we might adopt and then set up our own interpretation as a basis for declaring that due process has been denied.  We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.

Id. at 731.

Because Ground Eight does not assert violation of federal law, it is not cognizable under § 2254 and does not warrant habeas relief.

I.  Certificate of Appealability

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  See Miller-El v. Cockrell, 537 U.S. 322 (2003).

## IV.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition with prejudice and declines to issue a certificate of appealability under 28 U.S.C. § 2253(c).

   /s/ Faith S. Hochberg    
**FAITH S. HOCHBERG, U.S.D.J.**

DATED:  September 5, 2006